1    IClayton C. James (Cal. Bar No. 287800)
       clay.james@hoganlovells.com
2    Srecko Vidmar (Cal. Bar No. 241120)
       lucky.vidmar@hoganlovells.com
3    HOGAN LOVELLS US LLP
     Three Embarcadero Center, Suite 1500
4    San Francisco, California 94111
     Telephone: (415) 374-2300
5    Facsimile: (415) 374-2499

6    Robert H. Sloss (Cal. Bar No. 87757)
       bob.sloss@oracle.com
7    ORACLE CORPORATION
     500 Oracle Parkway, MS 5OP7
8    Redwood Shores, California 94065
     Telephone: (650) 506-5200
9    Facsimile: (650) 506-7114

10   Attorneys for ORACLE CORPORATION and
     ORACLE AMERICA, INC.

11

12                  UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, and ORACLE AMERICA, INC., a Delaware corporation | Case No. 3:13-cv-03203-NC |
| | **COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY AND UNEFORCEABILITY OF U.S. PATENT NOS. 5,576,951 AND 7,010,508** |
| Plaintiffs, | |
| v. | |
| LANDMARK TECHNOLOGY, LLC, a Delaware limited liability company, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

       Plaintiffs Oracle Corporation and Oracle America, Inc. (collectively "Oracle"), through their undersigned counsel, seek a declaration that U.S. Patent Nos. 5,576,951 (the "'951 patent") and 7,010,508 (the "'508 patent") are invalid and have not been directly or indirectly infringed by Oracle and that the '951 patent is unenforceable because of inequitable conduct committed during its prosecution. In support of its request for declaratory judgment relief, Oracle alleges, on knowledge with respect to its own acts and on information and belief with respect to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is an action for a declaratory judgment of patent non-infringement and invalidity arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2.    Plaintiff Oracle Corporation is a Delaware corporation with its principal place of business in Redwood Shores, California.

3.    Plaintiff Oracle America, Inc. is a Delaware corporation with its principal place of business in Redwood Shores, California.

4.    Defendant Landmark Technology, LLC ("Landmark") is a Delaware corporation that represents its principal place of business to be at 719 W. Front Street, Suite 157, Tyler, Texas 75702.

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202.

6.    This Court has personal jurisdiction over Landmark because of Landmark's contacts within the State of California, which include orchestrating and directing its patent licensing business from within the State of California.  Upon information and belief, Landmark derives substantial revenues from its patent licensing activities within California.  Landmark's contacts with California include at least the following:

   a.    Lawrence B. Lockwood, the managing member of Landmark Technology, LLC, resides in California;

   b.    Mr. Lockwood has previously asserted patents from the same family as the Landmark patents in federal courts in California;

   c.    At least some of Landmark's employees or consultants who are directly involved in Landmark's current attempted commercialization of its patents reside in California;

   d.    Landmark has licensed its patents to one or more California companies in

agreements that are governed by California law and in which Landmark agreed to litigate any disputes related to the agreements in California;

        e.      Landmark's lead attorneys involved in Landmark's assertion of its patents reside in California; and

        f.      Patrick Nunally – Landmark's executive who communicated with Oracle regarding Landmark's patents – resides in California.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c).

8.      This is an intellectual property matter, which shall be assigned on a district-wide basis under Civil L.R. 3-2(c).

9.      An immediate, real, and justiciable controversy exists between Oracle and Landmark as to whether the '951 patent and the '508 patent are valid and have been infringed by Oracle and as to whether the '951 patent is unenforceable based on inequitable conduct committed before the United States Patent & Trademark Office ("PTO").

**FACTUAL ALLEGATIONS**

10.     The PTO issued the '951 patent, entitled "Automated Sales and Services System," on November 19, 1996.  Lawrence B. Lockwood is listed as the sole inventor on the face of the '951 patent.

11.     On March 7, 2006, the PTO issued the '508 patent, entitled "Automated Multimedia Data Processing Network," and also listing Lawrence B. Lockwood as the sole named inventor.

12.     The '951 patent and the '508 patent are in the same patent family, each claiming priority to U.S. Patent Application No. 06/613,525 filed by Mr. Lockwood on May 24, 1984, and later issued as U.S. Patent No. 4,567,359.  Each of the five figures in the '508 patent is also present in the '951 patent.

13.     Landmark claims to be the owner of all rights in the '951 patent and the '508 patent.

14.     On April 30, 2013, Patrick Nunally, Executive Vice President for the Technology Licensing Group of Landmark, sent a letter to Oracle, a true and correct copy of which is attached

as Exhibit A to this Complaint.

15.     While the April 30, 2013 letter was issued on Landmark letterhead listing an address in Tyler, Texas, Mr. Nunally actually resides in California.

16.     In the letter, Landmark expressly identified the '951 patent and alleged that Oracle's website at www.oracle.com makes use of the claimed technology of the '951 patent. The letter further "offer[ed] [Oracle] a license to use [Landmark's] patented technology," and enclosed a proposed license agreement.

17.     The form license agreement required a payment by Oracle in an unspecified amount in exchange for a license to a "Patent" that is not identified in that form license agreement.  The form agreement lists Lawrence Lockwood, the named inventor of both the '951 and '508 patents, as the Managing Member of Landmark.

18.     Over the past several years, Landmark has asserted the '951 patent and the '508 patent in dozens of actions against over one hundred operators of e-commerce websites.  In fact, in May and June 2013 alone, Landmark filed at least nine separate patent infringement actions asserting the '951 patent and the '508 patent.

19.     In each of these lawsuits filed in 2013, Landmark asserted both the '951 patent and the '508 patent against operators of e-commerce websites.  Landmark has asserted both the '951 patent and the '508 patent against Oracle customers, some of which have requested indemnification from Oracle.

20.     Landmark's letter to Oracle alleging that Oracle's website practices the '951 patent, as well as Landmark's prodigious history of asserting the '951 patent and the '508 patent, which are in the same patent family, constitute affirmative acts by Landmark related to the enforcement of the '951 patent and the '508 patent against Oracle.

21.     Contrary to Landmark's contentions, Oracle does not infringe any claims of the '951 patent or the '508 patent.

22.     Furthermore, contrary to Landmark's contentions, the claims of the '951 patent and the '508 patent are invalid for failing to satisfy one or more conditions for patentability under 35 U.S.C. §§ 101, 102, 103 and/or 112.

23.     As described below, during prosecution of the applications that became the '951 patent, the inventor and his agents made several false statements to the PTO and failed to disclose material information.   In each instance, the false statements and failure to disclose relevant information were material to patentability and violated applicable duties of candor.   The applicant's inequitable conduct included wholesale, verbatim copying of claims from an unrelated patent.

24.     Based on the communication from Landmark asserting the '951 patent and Landmark's history of asserting the '951 and '508 patents, Oracle has a reasonable apprehension that Landmark will institute litigation against Oracle.   Further, based on at least the facts alleged below, the dispute between Oracle and Landmark regarding the validity, infringement and enforceability of the '951 patent and the '508 patent is real, substantial, definite and concrete.

**COUNT I:  DECLARATION OF NON-INFRINGEMENT OF THE '951 PATENT**

25.     Oracle incorporates herein each of the allegations above.

26.     Landmark has alleged that Oracle infringes the '951 patent through the use of, *inter alia*, its www.oracle.com website.

27.     Oracle has not infringed and is not infringing, directly or indirectly, any valid and enforceable claim of the '951 patent because, *inter alia*, Oracle's www.oracle.com website does not include a computer search system for retrieving information or a computerized system for selecting and ordering a variety of products as specifically claimed in the '951 patent.

28.     A substantial, immediate, and real controversy exists between Oracle and Landmark regarding Oracle's alleged infringement of the '951 patent.

29.     Oracle is entitled to a declaration that Oracle does not infringe the '951 patent.

**COUNT II:  DECLARATION OF INVALIDITY OF THE '951 PATENT**

30.     Oracle incorporates herein each of the allegations above.

31.     Landmark has asserted that the claims of the '951 patent are valid.

32.     Oracle contends that the claims of the '951 patent are invalid for failing to satisfy one or more conditions for patentability under 35 U.S.C. §§ 101, 102, 103 and/or 112 because, *inter alia*, computerized sales and services systems claimed in the '951 patent, such as Prestel,

1  Minitel, and Viewtron, were known in the art before the critical date of the '951 Patent.

2      33.    A substantial, immediate, and real controversy exists between Oracle and

3  Landmark regarding the validity of the '951 patent.

4      34.    Oracle is entitled to a declaration that the '951 patent is invalid.

5  **COUNT III:  DECLARATION OF NON-INFRINGEMENT OF THE '508 PATENT**

6      35.    Oracle incorporates herein each of the allegations above.

7      36.    The '508 patent is in the same patent family as the '951 patent, and has been

8  asserted by Landmark along with the '951 patent in a large number of Landmark's patent

9  infringement actions, including Landmark's most recent wave of actions, including against Oracle

10  customers and against operators of websites with functionality similar to that of the

11  www.oracle.com website referenced in Landmark's letter to Oracle

12      37.    Oracle has not infringed and is not infringing, directly or indirectly, any valid and

13  enforceable claim of the '508 patent because, *inter alia*, Oracle's www.oracle.com website does

14  not include an automated multimedia system for data processing as claimed in the '508 patent.

15      38.    Oracle is entitled to a declaration that Oracle does not infringe the '508 patent.

16  **COUNT IV:  DECLARATION OF INVALIDITY OF THE '508 PATENT**

17      39.    Oracle incorporates herein each of the allegations above.

18      40.    Landmark has asserted that the claims of the '508 patent are valid.

19      41.    Oracle contends that the claims of the '508 patent are invalid for failing to satisfy

20  one or more conditions for patentability under 35 U.S.C. §§ 101, 102, 103 and/or 112 because,

21  *inter alia*, computerized multimedia data processing systems claimed in the '508 patent, including

22  systems known as "Prestel," "Minitel," and "Viewtron," were known in the art before the critical

23  date of the '508 Patent.

24      42.    A substantial, immediate, and real controversy exists between Oracle and

25  Landmark regarding the validity of the '508 patent.

26      43.    Oracle is entitled to a declaration that the '508 patent is invalid.

27

28

ORACLE'S COMPLAINT FOR DECLARATORY JUDGMENT

1    **COUNT V:  DECLARATION OF UNENFORCEABILITY OF THE '951 PATENT**

2    44.    Oracle incorporates herein each of the allegations above.

3    45.    In demanding that Oracle take a license to the '951 patent, Landmark has asserted

4    that the claims of the '951 patent are enforceable.

5    46.    Oracle contends that the '951 Patent is unenforceable due to four instances of

6    inequitable conduct described more fully below, either alone or in combination.

7    47.    Therefore, a substantial, immediate, and real controversy exists between Oracle

8    and Landmark regarding the enforceability of the '951 patent.

9    **First Instance of Inequitable Conduct:  Failure to Notify the PTO of Copied Claims**

10   48.    Prosecuting a patent application is an *ex parte process*, and patent applicants are

11   subject to the duties of good faith, candor, and disclosure, among others, including a duty to

12   disclose to the PTO all information known to that individual to be material to patentability.

13   49.    On March 16, 1994, Henri J.A. Charmasson, a patent attorney, filed with the PTO

14   U.S. Patent Application No. 08/210,301 (the "'301 application").  The sole named inventor in the

15   '301 application was Lawrence Lockwood.

16   50.    The '301 application presented twelve claims for examination to the United States

17   Patent and Trademark Office ("PTO").  Claims 1-10 of the '301 application were exact copies of

18   claims 1-6, 9, 25, 26, and 28, respectively, from U.S. Patent No. 5,241,671 (the "'671 Patent"),

19   which issued on August 31, 1993.  In addition, claim 11 of the '301 application was a substantial

20   copy of claim 39 of the '671 Patent.

21   51.    The '671 Patent was issued to Michael Reed and others, and assigned to

22   Encyclopaedia Britannica, Inc.  Upon information and belief, the inventors and the assignee of the

23   '671 patent are unrelated to the applicants of the '301 application.

24   52.    37 C.F.R. § 1.607(c) requires that "[w]hen an applicant [for patent] presents a

25   claim which corresponds exactly or substantially to a claim of a patent, the applicant shall

26   identify the patent and the number of the patent claim…."

27   53.    MPEP § 2001.06(d), both in its current incarnation and as it existed at the time the

28   '301 application was filed, states that "[w]here claims are copied or substantially copied from a

1    patent, 37 CFR 1.607(c) requires applicant shall, at the time he or she presents the claim(s),

2    identify the patent and the numbers of the patent claims…"

3            54.    Applicants did not notify the PTO that claims 1-11 of the '301 application were

4    copied from the '671 Patent.

5            55.    37 C.F.R. § 10.23(c)(7) states that "[k]nowingly withholding from the [PTO]

6    information identifying a patent or patent application of another from which one or more claims

7    have been copied" constitutes disreputable or gross misconduct.

8            56.    MPEP § 2001.06(d), both in its current incarnation and as it existed at the time the

9    '951 Patent was filed, states that "the information required by 37 CFR 1.607(c) as to the source of

10   copied claims is material information under 37 CFR 1.56…."

11           57.    Applicants' failure to notify the PTO that claims 1-11 of the '301 application were

12   copied from the '671 Patent and to identify which claims of the '671 Patent were copied,

13   constitutes affirmative egregious misconduct.

14           58.    Applicants' failure to notify the PTO of the copied claims was material to the

15   patentability of at least claims 1-9 of the '951 Patent as issued, which correspond to originally

16   filed claims 1-7 and 10-11 in the '301 application, because failure to identify such information to

17   the PTO is *per se* material to patentability.

18           59.    In addition, applicants' failure to notify the PTO of the copied claims was material

19   to the patentability of at least claims 1-9 of the '951 Patent because identifying the copied claims

20   would have triggered an interference, a much more thorough and in-depth examination as to

21   whether the claims of the '301 application were entitled to be issued in light of the existence of

22   identical claims in a previously-issued U.S. Patent.

23           60.    On information and belief, the '951 Patent would not have issued if the applicants'

24   had notified the PTO of the copied claims.

25           61.    When he filed the '301 application, Mr. Charmasson was an experienced patent

26   attorney.  He became a registered patent attorney in 1974, and directly prosecuted over 300

27   patents to issue, as well as many applications that were abandoned.  On information and belief,

28   Mr. Charmasson has filed and prosecuted well over one hundred patent applications that claimed

1    to be a continuation, continuation-in-part, or divisional of a previous application.

2        62.    On information and belief, applicants affirmatively chose not to notify the PTO

3    that they copied the claims of the '301 application from the '671 Patent with the intent to mislead

4    the PTO.  Alternatively, such intent to mislead the PTO is the only reasonable inference from the

5    totality of the circumstances alleged in this complaint.

6        63.    Therefore, applicants' failure to notify the PTO of the copied claims constitutes

7    inequitable conduct that renders the '951 Patent unenforceable.

8    **Second Instance of Inequitable Conduct:  False Claim of Priority in the '973 Application**

9        64.    35 U.S.C. § 120 allows for a patent application to claim priority to an earlier-filed

10    application only where the earlier-filed application discloses the invention in the later-filed

11    application in the manner provided by 35 U.S.C. § 112.

12        65.    MPEP § 201.08 defines a continuation-in-part application as "an application filed

13    during the lifetime of an earlier nonprovisional application, repeating some substantial portion or

14    all of the earlier nonprovisional application and adding matter not disclosed in the said earlier

15    nonprovisional application."

16        66.    The '951 Patent claims priority to May 24, 1984 – the filing date of U.S. Patent

17    4,567,359 – through a series of applications including U.S. Patent Application Nos. 06/822/115

18    (the "'115 application"), 07/152,973 (the "'973 application"), 07/396,283 (the "'283

19    application"), and 08/116,654 (the "'654 application").

20        67.    Applicants' claim of a May 24, 1984 priority date was based on applicants'

21    representations to the PTO that the '115, '973, '283, and '654 applications were an unbroken

22    chain of continuation or continuation-in-part applications leading back to the original application

23    filed on May 24, 1984.

24        68.    Specifically, in applications filed on February 18, 1988, August 21, 1989,

25    September 3, 1993, and March 16, 1994, Mr. Charmasson represented to the PTO that the '973

26    application is a continuation-in-part of the '115 application.

27        69.    This representation was false since the specification of the '973 application does

28    not share any substantive overlap with the specification of the '115 application nor does it repeat

1    any substantial portion of the '115 application.  In fact, the '973 application was an entirely new

2    application, with brand new figures and a completely new specification.

3          70.     Therefore, applicants were not entitled to claim priority under 35 U.S.C. § 120 to

4    the '115 application at any point during the prosecution of the applications that led to the issuance

5    of the '951 patent.  In addition, because the '115 application was abandoned long before the '301

6    application was filed, applicants were not entitled to claim priority under 35 U.S.C. § 120 to the

7    '115 application in the '301 application.

8          71.     As such, the applicants' claim of priority to May 24, 1984, through the '973

9    application was false.

10         72.     The PTO takes a patent applicant's representations regarding priority as true and

11   does not conduct an independent inquiry into whether the earlier application satisfies the

12   requirements of 35 U.S.C. § 120 or 35 U.S.C. § 112.

13         73.     Therefore, such representations regarding claim priority to the PTO are critical to a

14   fair and honest examination because the PTO conducts its prior art search as if the pending

15   application is entitled to the priority date claimed by the applicant.

16         74.     Applicants' priority claim to the '115 application, when that application shares no

17   substantive overlap with later applications that claim priority to the '115 application, constitutes

18   affirmative egregious misconduct.

19         75.     Applicants' false priority claim is also inherently material to the patentability of all

20   claims of the '951 Patent because the PTO limited the scope of its prior art search to an earlier

21   date than what the applicants were actually entitled to.

22         76.     Specifically, because several limitations in each independent claim of the '951

23   Patent have 35 U.S.C. § 112 support, if at all, only in the '973 application, applicants' false

24   priority claim is material because it prevented the PTO from considering prior art at least between

25   1984 (the earliest priority date claimed by the '951 Patent) and 1988 (the date of the '973

26   application).  As one example, the limitation "program means for controlling the display on said

27   display device of inquiries and acceptable answers" in claim 10 of the '951 Patent has 35 U.S.C.

28   § 112 support only in the '973 application, if at all.

77.     Given the rapid development of technology at issue at the time of the examination of the '301, '654, '283, '973 and '115 applications, applicants' false claim of priority precluded the PTO from examining the later-pending applications against later relevant prior art.

78.     On information and belief, the '951 Patent would not have issued if the applicants had not made a false priority claim to the '115 application.

79.     On information and belief, applicants' false statements to the PTO regarding priority were made with the intent to mislead the PTO.  Alternatively, such intent to mislead the PTO is the only reasonable inference from the totality of the circumstances alleged in this complaint, including patent prosecution experience of Mr. Charmasson and the lack of any substantive overlap in applications that might otherwise have supported the applicants' representations regarding priority.

80.     Therefore, applicants' false priority claims related to the '115 application constitute inequitable conduct that renders the '951 Patent unenforceable.

**Third Instance of Inequitable Conduct:  False Claim of Priority in the '283 Application**

81.     In addition to the false claim of priority related to the '973 application, applicants also misrepresented the content and priority related to the '283 application.   Specifically, in applications filed on August 21, 1989, September 3, 1993, and March 16, 1994, Mr. Charmasson represented to the PTO that the claims presented in the '951 Patent are entitled to claim priority to May 24, 1984, because the '283 application is a continuation-in-part of the '973 application.

82.     This representation was false, as the specification of the '283 application does not share any substantive overlap with the specification of the '973 application nor does it repeat some substantial portion of the '973 application.

83.     Therefore, applicants were not entitled to claim priority under 35 U.S.C. § 120 to the '973 application at any point during the prosecution of the applications that led to the issuance of the '951 patent.  In addition, because the '973 application was abandoned long before the '301 application was filed, applicants were not entitled to claim priority under 35 U.S.C. § 120 to the '973 application in the '301 application.

84.     As such, the applicants' claim of priority to May 24, 1984, through the '283

1    application was false.

2        85.    As noted above, this false claim of priority to the '973 application, when that

3    application shares no substantive overlap with later applications that claim priority to the '973

4    application, constitutes affirmative egregious misconduct.

5        86.    Applicants' false priority claim is inherently material to the patentability of all

6    claims of the '951 Patent because the PTO limited the scope of its prior art search to an earlier

7    date than that to which the applicants were entitled.

8        87.    Specifically, because several limitations in each independent claim of the '951

9    Patent have 35 U.S.C. § 112 support, if at all, only in the '283 application, applicants' false

10   priority claim is material because it prevented the PTO from searching for prior art between 1984

11   (the earliest priority date claimed by the '951 Patent) and 1989 (the filing date of the '283

12   application).  As one example, the limitation "accessing means for providing access to said

13   related information in said another entry path means" in claim 1 of the '951 patent has 35 U.S.C.

14   § 112 support only in the '283 application, if at all.

15       88.    Given the rapid development of technology at issue at the time of the examination

16   of the '301, '654, '283, '973 and '115 applications, applicants' false claim of priority precluded

17   the PTO from examining the later-pending applications against later relevant prior art.

18       89.    On information and belief, the '951 Patent would not have issued if the applicants

19   had not made a false priority claim to the '973 application.

20       90.    On information and belief, applicants' false statements to the PTO regarding

21   priority were made with the intent to mislead the PTO.  Alternatively, such intent to mislead the

22   PTO is the only reasonable inference from the totality of the circumstances alleged in this

23   complaint, including patent prosecution experience of Mr. Charmasson and the lack of any

24   substantive overlap in applications that might otherwise have supported the applicants'

25   representations regarding priority.

26       91.    Therefore, applicants' false priority claims related to the '973 application

27   constitute inequitable conduct that renders the '951 Patent unenforceable.

28

**Fourth Instance of Inequitable Conduct: Misrepresentations Regarding Content and**

**Priority of '301 Application**

92.     On March 16, 1994, Mr. Charmasson submitted to the PTO the '301 application, which later issued as the '951 Patent, in which he stated that the '301 application was a continuation of the '654 application and also a continuation of U.S. Application No. 08/096,610 (the "'610 application").

93.     On November 28, 1994, the PTO issued an Office Action in which it notified the applicants that the '301 application could not be a continuation of the '654 application because the disclosure of the '301 application is not the same as the disclosure of the '654 application.

94.     This instruction was consistent with MPEP § 201.07, which provides that for an application to be a "continuation," "the disclosure presented in the continuation must be the same as that of the original application; i.e., the continuation should not include anything which would constitute new matter if inserted in the original application."

95.     In response, the applicants submitted an Amendment and Reply on February 10, 1995 in which they stated that the '301 application is a continuation-in-part of the '654 application and also a continuation-in-part of the '610 application.  However, later in the same Amendment and Reply, the applicants again stated that the '301 application is a straight continuation of the '610 application and also a straight continuation of the '654 application.

96.     On September 26, 1995, the PTO issued a second Office Action where the examiner pointed out that the '301 application cannot be a continuation-in-part and a continuation at the same time.

97.     On November 3, 1995, the applicants submitted a second Amendment and Reply, in which they stated that the '301 application is a continuation-in-part of the '654 application and a continuation-in-part of the '610 application because neither the '654 application nor the '610 application contained the full disclosure of the '301 application.  However, in the same Amendment and Reply, the applicants represented to the PTO that the '301 application is a straight continuation of the combination of the '654 and '610 applications.

98.     In so doing, the applicants represented to the PTO that all matter in the '301

1  application can be found in either the '654 application or the '610 application.  On the basis of

2  this representation, the PTO issued the '951 Patent as a continuation of the combination of the

3  '654 application and the '610 application.

4        99.     In conducting its examination of the '301 application, the PTO made it clear that it

5  took applicants at their word, noting that applicants' statements regarding priority were "taken

6  automatically in good faith and candor; any discrepancies are a matter for the court."

7        100.    However, the applicants' statements specified above were not made in good faith

8  and candor.  Instead, they were false.  Contrary to the applicants' representation to the PTO that

9  the '301 application is a combination of the '654 and '610 applications, the '301 application

10 contains a substantial amount of disclosure that does not appear in either the '654 or '610

11 applications, including six figures and at least nine full columns of written description,

12 specifically figures 12-17 of the '301 application and col. 1, l.56-col. 2, l. 63, col. 6, l. 36-col. 8, l.

13 2, col. 11, ll. 55-65, col. 15, ll. 11-20, col. 16, ll. 24-36, and col. 16, l. 43-col. 23, l. 41 of the

14 specification as it eventually issued in the '951 patent.

15       101.    The vast majority of the new matter added into the '301 application came verbatim

16 from the '973 application and several limitations in each independent claim of the '951 Patent

17 have 35 U.S.C. § 112 support, if at all, only in the '973 or '283 applications.  For this reason,

18 applicants' false priority claim is material because it prevented the PTO from considering prior

19 art at least between 1984 (the earliest priority date claimed by the '951 Patent) and 1989 (the date

20 of the '283 application).  As one example, the limitation "program means for controlling the

21 display on said display device of inquiries and acceptable answers" in claim 10 of the '951 Patent

22 has 35 U.S.C. § 112 support only in the '973 application, if at all.  As another example, the

23 limitation "accessing means for providing access to said related information in said another entry

24 path means" in claim 1 of the '951 patent has 35 U.S.C. § 112 support only in the '283

25 application, if at all.

26       102.    Mr. Charmasson was well-aware of the new matter in the '301 application that

27 came from the '973 application.  In fact, although he initially cited directly to the '973 application

28 for Section 112 support, starting with the second Amendment and Reply and subsequent

documents, he began citing solely to the portions of the '301 application that were copied directly from the '973 application without identifying the '973 application as the source of those cited portions.

103.    Applicants' misrepresentations as to the priority and content of the '301 application constitute affirmative egregious misconduct.

104.    Applicants' misrepresentations as to the priority and content of the '301 application are inherently material to the patentability of all claims of the '951 Patent because the PTO limited the scope of its prior art search to an earlier date than what the applicants were actually entitled to given the new matter in the '301 application.  Thus, applicants' misrepresentations regarding the content of the '301 application precluded the PTO from examining the pending claims against later relevant prior art.

105.    On information and belief, the '951 Patent would not have issued if the applicants had not made misrepresentations regarding the content and priority of the '301 application.

106.    On information and belief, applicants' misrepresentations as to the priority and content of the '301 application were made with the intent to mislead the PTO.  Alternatively, such intent to mislead the PTO is the only reasonable inference from the totality of the circumstances alleged in this complaint, including patent prosecution experience of Mr. Charmasson and the plain inclusion of new matter that did not appear in either of the earlier applications that formed the basis for the applicants' false claims.

## Conclusion

107.    The instances of inequitable conduct specified above, taken alone or in combination, constitute affirmative egregious misconduct and material misrepresentations, and the most reasonable inference from the totality of the circumstances is that applicants intended to, and did, deceive the PTO in order to obtain allowance of the '951 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Oracle respectfully requests that the Court:

A.      Find and declare that Oracle does not infringe and has not infringed the '951 patent and the '508 patent;

B.      Find and declare that the claims of the '951 patent and the '508 patent are invalid;

C.      Find and declare that the claims of the '951 patent are unenforceable due to inequitable conduct;

D.      Enter judgment in favor of Oracle and against Landmark on each of Oracle's claims;

E.      Find that this is an exceptional case under 35 U.S.C. § 285 and award Oracle its costs and reasonable attorneys' fees;

F.      Grant Oracle such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 11, 2013.                    HOGAN LOVELLS US LLP

By:     _s/ Clayton C. James_____
        Clayton C. James

Attorneys for Plaintiffs
ORACLE CORPORATION and ORACLE
AMERICA INC.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil L.R. 3-6, Oracle hereby demands a trial by jury on all issues and claims so triable.

Respectfully submitted,

Dated: July 11, 2013                     HOGAN LOVELLS US LLP

By:     _s/ Clayton C. James_____
        Clayton C. James

Attorneys for Plaintiffs
ORACLE CORPORATION and ORACLE
AMERICA INC.

# EXHIBIT A

 LANDMARK TECHNOLOGY, LLC

719 West Front Street, Suite 157
Tyler, Texas 75702
(800) 768-1324
www.LandmarkEDI.com

April 30, 2013

Ms. Safra A. Catz
President, CFO & Director
Oracle Corp.
500 Oracle Parkway
Redwood City, California 94065

VIA U.S. MAIL

Re: LANDMARK PATENT USE AND LICENSING OPPORTUNITY

Dear Ms. Safra A. Catz:

As you may know, Landmark Technology, LLC ("Landmark") has exclusive rights to certain innovative computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, on-line banking services, business-to-business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded technology covers, among other things, key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners. Landmark's U.S. Patent No. 5,576,951C1 is currently in re-examination, Control Number 90/012/685.

However, we believe that Oracle Corp.'s websites, one of which is currently found at www.Oracle.com, makes use of the technology covered by our patent, including, but not limited to, Claims 1 & 10 of U.S. Patent No. 5,576,951C1, which addresses certain critical aspects of business-to-business and business-to-consumer transactions. More precisely, Oracle's system indexes graphic and textual information using HyperText Markup Language/JAVA script programming along with an associated database to provide users with a computer search system for retrieving information as described in detail by the claims of U.S. Patent No. 5,576,951C1 used at www.Oracle.com. Additionally, we believe that Oracle's mobile commerce systems enabled by your applications, some of which can be found at https://itunes.apple.com/us/artist/oracle-america-inc./id284793707 and

Ms. Safra A. Catz — President, CFO & Director
April 30, 2013
Page 2

https://play.google.com/store/apps/developer?id=Oracle+America,+Inc., also make use of the technology.  We believe you will find that Landmark's patent teaches technologies which are contributing significantly to Oracle's bottom line, and as such, are offering you a license to use our patented technology.  For your convenience, enclosed is a draft license agreement and a copy of U.S. Patent No. 5,576,951C1.

We would like to further outline the details of this licensing opportunity and answer any questions you may have.  Moreover, if you are of the opinion that you do not need a license under this patent, it would be helpful if you could give us some insight into your reasons, and we would welcome a dialogue with you on this point. I'm sure you have many questions, and as such, I would like to offer you and your team a detailed presentation showing examples of Oracle's current use of Landmark's technology.

At your earliest convenience, please suggest upcoming dates and times in which we could have a brief web conference (via GoToMeeting). You can reach me directly via an email at patrick@landmarkEDI.com.


All the best,


Patrick Nunally, Ph.D.
Executive Vice President - Technology Licensing Group
Landmark Technology, LLC
patrick@landmarkEDI.com


PN/krl
Enclosures (2)